IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
|  | * | Criminal No. RDB-16-0087 |
| MARCUS CURETON, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM ORDER**

The facts of this case have been set forth in this Court's prior Memorandum Orders of March 1, 2017 and March 6, 2017 (ECF Nos. 139 & 140). Defendants William McFadden ("McFadden") and Taeqwon Prater ("Prater") are now the only remaining Defendants proceeding to trial in this action on <u>Monday, September 25, 2017</u>.[1] McFadden and Prater are charged with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Counts 2, 4, 6, 10 & 12); Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 8); Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Counts 3, 5, 7, 9, 11 & 13); Possession of a Firearm and Ammunition by a Felon, in violation of 18 U.S.C. § 922(g)(1) (Counts 18 & 19); and Aiding and Abetting, in violation of 18 U.S.C. § 2, in connection with a series of

---

[1] Co-Defendant Kevin Reynolds ("Reynolds") has subsequently pled guilty to Aiding and Abetting Hobbs Act Robbery (Count 16). *See* Reynolds J., p. 1, ECF No. 104. On January 25, 2017, this Court sentenced Reynolds to 77 months imprisonment, with credit for time served in federal custody since June 15, 2016, followed by a period of three years supervised release. *Id.* at p. 2-3. Additionally, Co-Defendant Marcus Cureton ("Cureton") has now pled guilty to Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 1) and Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 16), pursuant to a Rule 11(c)(1)(C) Plea Agreement with the Government (ECF No. 149), with an agreed sentence of 180 months imprisonment, and is currently awaiting sentencing by this Court.

1

robberies committed between October of 2015 and their arrest on November 22, 2015.[2] Currently pending before this Court are the following pretrial motions, in which McFadden and Prater challenge a series of warrants issued by Judges of the Circuit Court for Baltimore County, Maryland and by United States Magistrate Judges of this Court:

- Prater's Motion to Suppress Evidence as to the search of three cell phones seized in a car in which he was a passenger on November 22, 2015 (ECF No. 39);
- Prater's Motion to Suppress Evidence as to the search for information associated with cellular telephone 301-800-1043 (ECF No. 41);
- Prater's Motion to Adopt Motions Filed by Co-Defendant (ECF No. 42);
- Prater's Motion to Suppress Evidence as to the search of 1047 Cameron Road, Baltimore, Maryland (ECF No. 43);[3]
- McFadden's Motion to Suppress Evidence as to the searches of 2830 Lake Avenue, Baltimore, Maryland; 4845 Bowland Avenue, Baltimore, Maryland; a Nissan Altima, VIN 1N4AL3AP3FC285685; and an Acura TL, VIN 19UUA66236A060398 (ECF No. 52); and
- McFadden's Motion to Suppress Evidence obtained from electronic devices and tracking devices (ECF No. 53).[4]

The parties' submissions have been reviewed, and this Court conducted a hearing on the pending motions on June 12, 2017. For the reasons stated herein, all of the challenged warrants were constitutionally valid and supported by probable cause. Accordingly, all of McFadden and Prater's pending pretrial motions are without merit and are now DENIED.

---

[2] Via Memorandum Order dated March 1, 2017 (ECF No. 139), this Court previously severed these counts from Counts 14, 15, and 16, which charged a second conspiracy between Defendants Cureton and Reynolds in December of 2015, after the arrest of McFadden and Prater.

[3] Also pending before this Court is Defendant Prater's Motion to Extend Time for Filing Motions (ECF No. 44), filed by his prior counsel. In ruling on the pending motions, this Court has considered all arguments raised by Mr. Prater up to and including the time of this Court's June 12, 2017 hearing on the pending motions. **Accordingly,** Prater's Motion to Extend Time for Filing Motions (ECF No. 44) is now MOOT.

[4] Still pending before this Court are Reynolds' Motion to Suppress Evidence (ECF No. 49); Reynolds' Motion to Adopt Motions filed by Co-Defendants (ECF No. 50); Reynolds' Motion to Sever Offenses and Defendants (ECF No. 51); Cureton's Motion to Suppress Identifications, Statements, and Seized Items (ECF No. 46); Cureton's Motion to Suppress Evidence Seized Pursuant to Search Warrants (ECF No. 108); and Non-Party Sheriff James T. Dewees' Motion to Quash or for a Protective Order with respect to Subpoenaed Internal Affairs Documents for Cureton's Trial (ECF No. 147). As discussed *supra*, both Cureton and Reynolds have now pled guilty to one or more charged offenses and will not be proceeding to trial. Accordingly, these still-pending pretrial motions are now MOOT.

STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The Supreme Court of the United States "has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975) (citing *Johnson v. United States*, 333 U.S. 10, 13—14 (1948)).  "An affidavit supporting a warrant that authorizes a search or seizure 'must provide the magistrate with a substantial basis for determining the existence of probable cause' in light of the totality of the circumstances." *United States v. Marion*, 547 F. App'x 283, 286 (4th Cir. 2013) (per curiam) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).  To establish probable cause, " 'the facts presented to the magistrate need only 'warrant a [person] of reasonable caution' to believe that evidence of a crime will be found.' " *Id.* (quoting *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992) (per curiam)).

The Fourth Amendment further "requires a sufficient nexus between the criminal conduct, items to be seized, and the place to be searched." *United States v. Abraham*, 213 F. App'x 240, 247 (4th Cir. 2007) (citing *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988)).  The Fourth Circuit has held "that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant 'contains no factual assertions directly linking the items sought to the defendant's residence.' " *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (quoting *United States v. Servance*, 394 F.3d 222, 230 (4th Cir. 2005)). "[T]he nexus between the place to be searched and the items to be

3

seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Anderson*, 851 F.2d at 729. The United States Court of Appeals for the Fourth Circuit has held that " 'a magistrate's assessment of the facts when making a determination of probable cause" should be afforded " 'great deference.' " *Id.*

## ANALYSIS

**I.     Defendants are Not Entitled to a *Franks* Hearing**

McFadden has requested a "*Franks* hearing" in order to test the veracity of the affidavits supporting certain search warrants in this case, which he has challenged via two separate Motions to Suppress (ECF Nos. 52 & 53). Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant "may obtain an evidentiary hearing concerning the veracity of the statements in an affidavit in support of a search warrant." *United States v. Wilford*, 961 F. Supp. 2d 740, 773 (D. Md. 2013). However, a criminal defendant is only entitled to a *Franks* hearing if he can both make a "substantial preliminary showing" that the affiant made a false statement in the affidavit "knowingly and intentionally, or with reckless disregard for the truth," and also show that the false statement itself was necessary to the determination of probable cause. *Franks*, 438 U.S. at 155-56. "The defendant carries a heavy burden in showing that a *Franks* hearing is necessary." *United States v. Tyson*, 462 F. App'x. 402, 408 (4th Cir. 2012) (citation omitted). This showing must be "more than conclusory" and must be accompanied by a detailed offer of proof. *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). McFadden has made no such offer of proof, either in his filings or before this Court at the June 12, 2017 hearing. He raises only the conclusory allegation that "[t]he affidavits in support of the warrants contained false information and/or information in

4

reckless disregard of the truth." Mot. to Suppress, ¶ 5, ECF No. 52. Prater has likewise made no effort to prove "false statement" by any affiant in this case. Accordingly, this Court will not conduct a *Franks* hearing with respect to any of the challenged warrants.

II. **The Three GPS Vehicle Tracking Warrants for a Nissan Altima Registered to McFadden, an Acura TL Registered to McFadden, and a Nissan Rental Car Rented by McFadden, Issued on November 18, 2015 and November 19, 2015, Were Constitutionally Valid and Supported by Probable Cause**

Between November 18, 2015 and November 19, 2015, Judges Paul Hanley and Robert Cahill[5] of the Circuit Court for Baltimore County, Maryland issued three separate warrants authorizing the electronic tracking of three vehicles: a Nissan Altima with VIN 1N4AL3AP3FC285685 Displaying Registration 1CC6161 (ECF No. 114-16); an Acura TL with VIN 19UUA66236A060398 Displaying Registration 577824T (ECF No. 114-17); and a Nissan Rental Car with VIN 1N48L3AP8FC281065 Displaying Registration 7BX0712 (ECF No. 114-18). The Nissan Altima and Acura TL were both registered to McFadden, and the Rental Nissan was rented by McFadden. In his pending Motion to Suppress Evidence obtained from electronic devices and tracking devices (ECF No. 53), McFadden objects that the three warrants authorizing GPS tracking of his vehicles were "invalid on their face or issued by courts without competent jurisdiction" and that the affidavits in support of those warrants "contained insufficient information from which the reviewing judge could determine probable cause." Mot. to Suppress, ¶¶ 5, 7, ECF No. 53.

---

[5] At the June 12, 2017 hearing, this Court asked the Government to clarify which Judges of the Baltimore County Circuit Court issued the three GPS vehicle tracking warrants. Via letter to this Court dated June 13, 2017 (ECF No. 159), the Government has now indicated that Judge Hanley signed the two November 18, 2015 Orders for the tracking of the Acura TL and Nissan Altima (ECF Nos. 114-16 & 114-17) and that Judge Cahill signed the November 19, 2015 Order for the tracking of the Rental Nissan (ECF No. 114-18).

As stated above, in assessing probable cause, this Court must afford great deference to the initial judicial officer's determination. *See, e.g., United States v. Henry*, 673 F.3d 285, 289–90 (4th Cir. 2012). This Court reviews the known facts and circumstances and determines whether, based upon a common sense determination, there is a fair probability that evidence of a crime will be found. *See United States v. Wellman*, 663 F.3d 224, 228 (4th Cir. 2011). All three GPS tracking warrants were supported by the affidavits of Detective Joshua Battaglia (#4870) of the Baltimore County Police Department. In his affidavits, Detective Battaglia detailed his ongoing investigation into a series of armed robberies committed in Baltimore County, Baltimore City, Carroll County, Howard County, and Montgomery County, Maryland in October of 2015. *See, e.g.*, Rental Nissan Aff., pp. 2-9. He explained that the modus operandi, vehicle descriptions, and suspect descriptions were similar across all of the robberies. *Id.* at 9-10.

Detective Battaglia indicated that suspects fleeing one of the robberies in Baltimore City on October 28, 2015 had dropped a white cell phone on the ground, which was recovered by the Baltimore City Police. *Id.* at 10. Police subsequently obtained a search and seizure warrant for toll records and cell site location information for that phone. *Id.* The phone was found to have made frequent calls "to subjects associated with the address of 1047 Cameron Road, Baltimore, Maryland 21212," an address found to be associated with Prater, whose physical characteristics were similar to that of the robbery suspects. *Id.* Additionally, investigators discovered that a frequent contact of the recovered phone was the number 301-800-1043, a number found to be associated with McFadden. *Id.* at 11. Records of the Maryland Motor Vehicle Administration subsequently revealed that McFadden owned

a tan-colored 2015 Nissan Altima with Maryland registration 1CC6161, which was consistent with the description of a vehicle identified at the scene of several robberies. *Id.* The Nissan was co-listed to Nicole Cherice Flowers, who also owned a 2015 Acura TL with Maryland registration 5777824T[6]. *Id.* The Acura also resembled a suspect car in the robberies. *Id.* Detectives further discovered that McFadden had been involved in an accident while driving a 2015 Nissan Altima Rental car with Maryland registration 7BX0712, which was the same color as the Nissan owned by McFadden. *Id.* Detectives had previously begun tracking McFadden's phone, pursuant to a separate warrant, and had spotted the rental vehicle at the same location as McFadden's phone. *Id.* For these reasons, investigators sought warrants authorizing GPS tracking of the Nissan Altima, Acura TL, and Rental Nissan.

At this Court's hearing on June 12, 2017, counsel for McFadden specifically objected that Detective Battaglia's affidavits inaccurately concluded that McFadden's physical description, recovered from a state database, matched that of the suspects in the robberies of "Jack's Fine Foods" and "Nikki's Discount Liquors." While the affidavits state that "McFadden is listed as 6'3" and 235 pounds and fits the general description of the heavyset suspect seen in the robberies at Jack's Fine Foods and Nikki's Discount Liquors," the suspects in those robberies are identified as being 6' 1" & 170 pounds, 5' 9" & 200 pounds, 5' 9" & 180 pounds, and 5' 9" & 250 pounds, respectively. *Id.* at 3-4, 11. However, the affidavits only claimed that McFadden matched the "general" descriptions. Additionally, as discussed *supra*, even without a physical resemblance between McFadden and the robbery suspects, the GPS tracking warrants were independently supported by evidence obtained

---

[6] In a subsequent affidavit (ECF No. 114-21), Special Agent Summer Baugh of the Federal Bureau of Investigation indicated that the Acura was later transferred from Flowers to McFadden.

from the abandoned cell phone, which linked both McFadden and Prater to the robberies. Furthermore, the subject vehicles resembled vehicles observed by multiple eyewitnesses, and recorded on surveillance footage, at the scene of several robberies.

For these reasons, in light of the totality of the circumstances, there was probable cause to support issuance of the GPS tracking warrants. McFadden has identified no constitutional deficiency, either in the issuance or execution of these warrants. Accordingly, McFadden's Motion to Suppress Evidence obtained from electronic devices and tracking devices (ECF No. 53) is DENIED with respect to the three GPS tracking warrants.

**III. The Tracking Warrant for Cellular Telephone Number 301-800-1043 and the Search Warrant for Information Associated with Cellular Telephone Number 301-800-1043, Issued on November 20, 2015, Were Constitutionally Valid and Supported by Probable Cause**

On November 20, 2015, Magistrate Judge Timothy Sullivan of this Court issued a Tracking Warrant for Cellular Telephone Number 301-800-1043 (ECF No. 114-19) and a Search Warrant for Information Associated with Cellular Telephone Number 301-800-1043 (ECF No. 114-20). That "301" telephone number was identified as McFadden's. In his pending Motion to Suppress Evidence obtained from electronic devices and tracking devices (ECF No. 53), McFadden challenges the issuance of these warrants. Additionally, Prater has filed a Motion to Suppress Evidence as to the search for information associated with cellular telephone 301-800-1043 (ECF No. 41). Both Defendants have baldly alleged that the warrants are facially deficient and lack probable cause.

In affidavits in support of both the cell tracking and cell information warrants, Special Agent Summer Baugh of the Federal Bureau of Investigation carefully detailed the joint state and federal investigation into the series of robberies in October of 2015 discussed *supra*. Cell

Info. Aff., p. 5, ECF No. 114-20. As Detective Battaglia had done in his prior affidavit, Special Agent Baugh detailed the common facts between the robberies that led investigators to believe they were related, including similar clothing, weapons, and getaway vehicles used by the suspects. *Id.* Special Agent Baugh further relayed that an abandoned phone had been recovered following one of the robberies in Baltimore City, that toll records revealed the phone being used in the vicinity of several of the robberies just before or after the robberies were committed, and that the target "301" phone number had been in frequent contact with the abandoned phone. *Id.* at 7-8. Special Agent Baugh indicated that the number was believed to be used by McFadden, who was already a suspected member of the conspiracy. Information obtained as a result of a prior search warrant for historic cell site records for the abandoned phone revealed that it had been in contact with the target "301" phone within minutes of, and within the same vicinity as, three of the robberies. *Id.* at 8. Accordingly, Special Agent Baugh sought cell information and a tracking warrant for the "301" number in order to further identify the scope of the ongoing commercial robbery conspiracy.

In light of the totality of the circumstances, there was probable cause to support issuance of these search warrants. They stated with particularity the target phone and set out a sufficient nexus between the alleged criminal conduct and items and places to be searched. Neither McFadden nor Prater has offered evidence to the contrary beyond their bald contentions, discussed *supra*. Accordingly, McFadden's Motion to Suppress Evidence obtained from electronic devices and tracking devices (ECF No. 53) and Prater's Motion to Suppress Evidence as to the search for information associated with cellular telephone 301-800-1043 (ECF No. 41) are both DENIED.

9

**IV.   The November 22, 2015 Warrants for the Search of 2830 Lake Avenue, Baltimore, Maryland; 1047 Cameron Road, Baltimore, Maryland; a 2015 Nissan Altima Bearing Maryland Tag 1CC6161 and VIN 1N4AL3AP3FC285685; and a 2006 Acura TL Bearing Maryland Temporary Tag 635338T and VIN 19UUA66236A060398 Were Constitutionally Valid and Supported by Probable Cause**

On the same day as McFadden and Prater's November 22, 2015 arrest, Magistrate Judge J. Mark Coulson of this Court issued four separate warrants authorizing the search of an upstairs bedroom at 2830 Lake Avenue, Baltimore, Maryland, 21213, identified as being occupied by McFadden; 1047 Cameron Road, Baltimore, Maryland, 21212; a 2015 Nissan Altima Bearing Maryland Tag 1CC6161 and VIN 1N4AL3AP3FC285685; and a 2006 Acura TL Bearing Maryland Temporary Tag 635338T and VIN 19UUA66236A060398 (ECF No. 114-21). The warrants were executed that same day. McFadden has now filed a Motion to Suppress Evidence obtained as a result of those searches (ECF No. 52).[7] He has raised the same bald attacks on the validity of these warrants discussed *supra*. However, at this Court's June 12, 2017 hearing, counsel for McFadden has subsequently clarified that McFadden's claims are based solely on the underlying invalidity of the earlier issued vehicle tracking and cellular phone warrants discussed above, a "fruit of the poisonous tree" argument.[8] For the reasons discussed above, those warrants were constitutionally valid and supported by probable cause. Accordingly, McFadden's Motion to Suppress Evidence as to the searches

---

[7] McFadden has also sought to suppress evidence obtained as a result of a search of 4845 Bowland Avenue, an address where McFadden's girlfriend, Flowers, resided. However, the record does not indicate that a search warrant was issued for a search of that property or that a search actually occurred. McFadden has provided no evidence to the contrary, nor has he raised any specific objections as to any search of that particular property. Accordingly, his Motion is DENIED as to that address.

[8] The United States Supreme Court announced the "fruit of the poisonous tree" doctrine in *Wong Sun v. United States*, 371 U.S. 471 (1963). Under the "fruit of the poisonous tree" doctrine, the "exclusionary rule requires the suppression not only of the evidence improperly seized, but 'extends as well to the indirect as the direct products of such invasions.'" *United States v. Ruhe*, 191 F.3d 376, 384 (4th Cir. 1999) (quoting *Wong Sun*, 371 U.S. at 484).

10

of 2830 Lake Avenue, Baltimore, Maryland; a Nissan Altima, VIN 1N4AL3AP3FC285685; and an Acura TL, VIN 19UUA66236A060398 (ECF No. 52) is DENIED.

To the extent Defendants seek to otherwise challenge the probable cause supporting these four warrants, their arguments are likewise without merit. In an affidavit submitted to Judge Coulson, Special Agent Summer Baugh relayed all of the investigative steps discussed *supra*, culminating with the arrest of McFadden and Prater on November 22, 2015. *See* Nov. 22, 2015 Aff., p. 2, ECF No. 114-21. Specifically, using vehicle and cellular tracking technology previously authorized by this Court, investigators had tracked McFadden's Nissan Altima as it traveled to both a Shell Gas Station in Woodbridge, Virginia and Exxon in Greenbelt, Maryland on November 22, 2015, at the same time that robberies were reported at those establishments. *Id.* at 3-4. The suspects, vehicle, and *modus operandi* of those two robberies matched those of the prior robberies under investigation. *Id.* at 3-5. Immediately following the second reported robbery, police stopped the vehicle upon its return to Baltimore. *Id.* at 4. Prater and McFadden were both arrested in Baltimore at 1:40pm on November 22, 2015. *Id.* Arresting officers observed loose cash falling from the vehicle as McFadden and Prater exited. *Id.* at 5. Additionally, officers recovered the keys to the Nissan Altima from McFadden's person. *Id.* Residential keys were also found on McFadden's keyring, which fit the lock at 2830 Lake Avenue, Baltimore, Maryland, an address believed to be McFadden's residence. *Id.* McFadden's girlfriend, Flowers, arrived at 2830 Lake Avenue driving the white Acura sedan at approximately 4:15 pm that same day. *Id.* at 6. Around this time, Prater stated to officers that his address was 1047 Cameron Road, Baltimore. *Id.* at 5.

In a Motion to Suppress Evidence as to the search of 1047 Cameron Road, Baltimore, Maryland (ECF No. 43) Prater has specifically objected to Special Agent Baugh's reliance on his statement to police that 1047 Cameron Road was *his address*. Prater explained at this Court's June 12, 2017 hearing that 1047 Cameron Road is not in fact his address. Prater now argues that his statements should be excluded, pursuant to this Court's prior Order of February 6, 2017 (ECF No. 126), granting Prater's prior Motion to Suppress Statements made in police custody (ECF No. 40). On February 6, 2017, this Court conducted a hearing on Prater's Motion to Suppress Statements (ECF No. 40). This Court heard testimony from Baltimore County Police Detective Joshua Battaglia and Prater himself and reviewed selected video clips from Prater's six-hour interrogation by the Baltimore County Police. Ultimately, this Court granted Prater's Motion, excluding from evidence an admission he had made to investigators at the conclusion of that interrogation, on the basis that it was not "voluntary."

However, Prater's providing his address to police at the time of his arrest is not subject to the same challenge. Asking an arrestee for his address falls squarely within the "routine booking exception" to the *Miranda* Rule. In *Pennsylvania v. Muniz*, the Supreme Court of the United States held that there exists a "routine booking exception" to *Miranda*. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Questions asked for the purpose of booking a suspect who has been arrested, which include asking for height, weight, and address, are exempt from *Miranda's* coverage. The answers are thus admissible, *even if no Miranda warnings have been given*. The United States Court of Appeals for the Fourth Circuit in *United States v. D'Anjou*, 16 F.3d 604, 609 (4th Cir. 1994) has confirmed that asking for an arrestee's address

falls squarely within the routine booking exception. For these reasons, Prater's objection to the use of his statement in preparing the warrant for the search of 1047 Cameron Road is without merit. He has identified no constitutional deficiency in either the issuance or execution of the warrant. As discussed *supra*, it was supported by probable cause. Accordingly, Prater's Motion to Suppress Evidence as to the search of 1047 Cameron Road, Baltimore, Maryland (ECF No. 43) is DENIED.

V. **The December 10, 2015 Warrant for the Search of Four Cell Phones Recovered Following the Arrests of Prater and McFadden Was Constitutionally Valid and Supported by Probable Cause**

Following the arrest of McFadden and Prater on November 22, 2015, Magistrate Judge Sullivan of this Court issued a warrant for the search of four target telephones seized during the execution of search warrants on McFadden's vehicles (ECF No. 114-23). In his pending Motion to Suppress Evidence as to the search of three cell phones seized in a car in which he was a passenger on November 22, 2015 (ECF No. 39), Prater raises several conclusory attacks on the warrant. They are all completely without merit. Special Agent Summer Baugh's affidavit in support of this warrant clearly relayed the investigative steps discussed *supra*, culminating in the discovery of the target cell phones in McFadden's car, along with a loaded handgun and $725 in cash, following the arrest of McFadden and Prater. *See* Cell Phones Aff., p. 4, ECF No. 114-23.

Additionally, at this Court's hearing on June 12, 2017, counsel for Prater clarified for this Court that Prater's sole challenge to this warrant is that a prior GPS tracking warrant on which this warrant was based, issued by Judge Cahill of the Circuit Court for Baltimore County, Maryland, was itself invalid. Specifically, Prater argues that Judge Cahill lacked

13

jurisdiction to issue a warrant outside of Baltimore County. However, the Government has subsequently submitted a Designation form signed by Chief Judge Mary Ellen Barbera of the Court of Appeals of Maryland, which designated Judge Cahill, among others, to sit as a Judge of the District Court of Maryland with state-wide jurisdiction at that time (ECF No. 155-1). Counsel for Prater has acknowledged that Chief Judge Barbera's Designation likely forecloses Prater's argument. Under the terms of the Designation, Judge Cahill did have jurisdiction to issue the tracking warrant in this case. For these reasons, Prater's Motion to Suppress Evidence as to the search of three cell phones seized in a car in which he was a passenger on November 22, 2015 (ECF No. 39) is DENIED.[9]

## VI. Even if the Challenged Warrants Were Not Supported by Probable Cause, or Were Otherwise Invalid, The Evidence Obtained Pursuant to Those Warrants Would Not Be Suppressed Because of the *Leon* Good-Faith Exception

In *United States v. Leon*, 468 U.S. 897, 926 (1984), the Supreme Court of the United States held that evidence obtained from an invalid warrant will only be suppressed if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." In *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), the United States Court of Appeals for the Fourth Circuit summarized the four situations in which the *Leon* good-faith exception does not apply:

> First, when the warrant is based on an affidavit containing "knowing or reckless falsity;" second, when the magistrate has simply acted as a "rubber stamp" for the police; third, when the affidavit does not "provide the magistrate with a substantial basis for determining the existence of probable cause;" and finally when the warrant is so "facially deficient" that an officer could not reasonably rely on it.

---

[9] Counsel for Prater had previously indicated via correspondence dated January 26, 2017 (ECF No. 106) that he intended to raise additional arguments with respect to the GPS tracking warrants. However, at this Court's June 12, 2017 hearing, counsel confirmed that the jurisdictional argument discussed *supra* as to Judge Cahill is the only additional argument he intended to raise.

*Wilhelm*, 80 F.3d at 121 (quoting *Leon*, 468 U.S. at 923).

In this case, all searches were conducted pursuant to search warrants issued by United States Magistrate Judges of this Court or Judges of the Circuit Court for Baltimore County, Maryland. Defendants have provided no indication that the affidavits submitted by Detective Joshua Battaglia and Special Agent Summer Baugh contained falsity, that the judges authorizing the warrants acted as "rubber stamps," or that the affidavits were "facially deficient" or otherwise failed to provide a substantial basis on which the Judges could make a finding of probable cause. As discussed *supra*, all of the challenged warrants in this case were constitutionally valid and supported by probable cause. However, even if any one of them had been constitutionally deficient, the evidence obtained pursuant to those warrants would not be suppressed because of the *Leon* good-faith exception.

### VII. This Court Will Not Dismiss Counts Three, Five, Seven, Nine, Eleven, and Thirteen of the Indictment, Charging Violations of 18 U.S.C. § 924(c)

Finally, in his pending Motion to Adopt Motions filed by Co-Defendant (ECF No. 42), Prater has sought to adopt Cureton's Motion to Dismiss Counts Alleging Violations of 18 U.S.C. § 924(c) (ECF No. 117), in which Cureton has argued that neither Hobbs Act Robbery nor Attempted Hobbs Act Robbery constitutes a predicate "crime of violence" under 18 U.S.C. § 924(c)(3)(A) (the "Force Clause"). However, following a motions hearing on February 6, 2017, this Court has previously denied Cureton's Motion, with respect to those counts against Cureton, for reasons set forth on the record. *See* Order, ECF No. 126. The United States Court of Appeals for the Fourth Circuit has held in *United States v. McNeal*, 818 F.3d 141, 157 (4th Cir.), *cert. denied*, 137 S. Ct. 164 (2016), that Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) is a "crime of violence" under the Force Clause.

Additionally, this Court in *United States v. Clarke*, No. JKB-15-503, 2016 WL 1110306, at *6 (D. Md. Mar. 22, 2016); *United States v. Hancock*, No. GJH-13-0274, 2016 WL 899239, at *5 (D. Md. Mar. 2, 2016); and *United States v. Hayes*, RDB-14-0577 has specifically held that Hobbs Act Robbery does constitute a "crime of violence" under Section 924(c)'s "Force Clause." Counsel for Prater has indicated to this Court that Cureton's Motion to Dismiss Counts Alleging Violations of 18 U.S.C. § 924(c) (ECF No. 117) is the only motion of his co-defendants that Prater seeks to adopt. Prater's Motion to Adopt Motions filed by Co-Defendant (ECF No. 42) is now GRANTED. However, for the reasons stated on the record at this Court's February 6, 2017 hearing, and summarized *supra*, the underlying argument as to the Section 924(c) charges is DENIED. To the extent that McFadden has also sought to adopt this argument, it is likewise DENIED.

## **CONCLUSION**

For these reasons, it is this 14th day of June, 2017, HEREBY ORDERED that:

1. Prater's Motion to Suppress Evidence as to the search of three cell phones seized in a car in which he was a passenger on November 22, 2015 (ECF No. 39) is DENIED;

2. Prater's Motion to Suppress Evidence as to the search for information associated with cellular telephone 301-800-1043 (ECF No. 41) is DENIED;

3. Prater's Motion to Adopt Motions Filed by Co-Defendant (ECF No. 42) is GRANTED, although the underlying attack on the 18 U.S.C. § 924(c) charges is DENIED;

4. Prater's Motion to Suppress Evidence as to the search of 1047 Cameron Road, Baltimore, Maryland (ECF No. 43) is DENIED;

5. Prater's Motion to Extend Time for Filing Motions (ECF No. 44) is MOOT;

6. Cureton's Motion to Suppress Identifications, Statements, and Seized Items (ECF No. 46) is MOOT;

7. Reynolds' Motion to Suppress Evidence (ECF No. 49) is MOOT;

8. Reynolds' Motion to Adopt Motions filed by Co-Defendants (ECF No. 50) is MOOT;

9. Reynolds' Motion to Sever Offenses and Defendants (ECF No. 51) is MOOT;

10. McFadden's Motion to Suppress Evidence as to the searches of 2830 Lake Avenue, Baltimore, Maryland; 4845 Bowland Avenue, Baltimore, Maryland; a Nissan Altima, VIN 1N4AL3AP3FC285685; and an Acura TL, VIN 19UUA66236A060398 (ECF No. 52) is DENIED;

11. McFadden's Motion to Suppress Evidence obtained from electronic devices and tracking devices (ECF No. 53) is DENIED;

12. Cureton's Motion to Suppress Evidence Seized Pursuant to Search Warrants (ECF No. 108) is MOOT;

13. Non-Party Sheriff James T. Dewees' Motion to Quash or for a Protective Order with respect to Subpoenaed Internal Affairs Documents for Cureton's Trial (ECF No. 147) is MOOT; and

14. Copies of this Memorandum Order shall be sent to Counsel of record.

       \_\_\_/s/_____
       Richard D. Bennett
       United States District Judge